Good morning, Your Honors. Just one moment. Valeria Calafiore-Healy, for Appellant Lupe AI Labs, Inc., and also for myself. Before we begin, I just want to inquire of you, if I may, and ask you about your ongoing involvement in this appeal and what seems to me a fairly possible potential for a conflict of interest with your client. Do you have anything you want to state to the court? Have you talked to your client about this? Yes, of course. We don't believe there is a conflict of interest with my client. I'm not sure why the court would raise that, but I'm happy to address it more later if the court has a more specific question. Okay, because it seemed like your client may have incentive to blame the dismissal on you, but Lupe AI hasn't made that argument on appeal, and I was just curious because there's also a question regarding the fees if we were to remand, and it seems like you and your client have incentives that may be directly at odds with respect to that. And I think you're the sister of the CEO, is that correct? That's correct, Your Honor. I'd be happy to address the first point, Your Honors. I think my client does not have that incentive because as a matter of law, actually blaming counsel is not a legally valid point, and there's many cases that establish that a party who hires counsel knowingly cannot then blame their counsel if something went wrong. But the more important point, Your Honor, is that we believe the dismissal is erroneous, not because of anything I did, but because of problems in the record. And I think, Your Honors, Let's just not move away from this conflict. Of course. Yes. Have you disclosed the nature and depth of this conflict? I'm not sure if you fully appreciate it with your client, and have you maybe obtained a written waiver? Yes. My clients are fully aware. They fully participate in every aspect of this case. But you said a moment ago that there's no conflict. So how could you get a waiver of a conflict that you don't believe exists? I didn't say I got a waiver from my clients. I said my clients are fully aware of everything that has happened in this case. Without disclosing previous communications, of course, we have had full discussions about all implications in the case, about the arguments that were made. Okay. Can you pause for a second? Sure. I want to ask a specific thing. Of course. So about the attorney's fees, if we believe that we need to remand for the consideration of the CTSA fees issue and the 1927 fees issue, it would seem like fees could only be awarded once. So under 1927, they could be awarded against the lawyer, and under CTSA, they could be awarded against the client. And if they can only be awarded once, there's a direct conflict between the lawyer who wants the client to pay and the client who wants the lawyer to pay. That is one of the issues in the case right now. So that seems to me to be a conflict that you would have had to inform your client of and get a waiver. When we started this conversation, you said, no, there's no conflict at all. So if we disagree with you and think there's a conflict, it seems like there needs to be a waiver. So what is there? There is currently no waiver. We did not believe there was a conflict. And I'm of course, if that's a concern for the court, I'm happy to go back to the client and discuss the issue of the waiver with them. But that's certainly not a has — I don't have a waiver today. My client is not here in the courtroom, but I can certainly bring them in if the court wishes. So how can we proceed with you representing a client that hasn't waived an obvious conflict? I don't believe, Your Honor, there is a conflict. I think the issue — we don't believe the dismissal was correct, and we don't believe there's any basis for the — I assume Your Honor was talking about the CUTSA fees? The fees are in the state law. We don't believe there's any basis for those CUTSA fees in our view. And so unless we believe there was something wrong that was done, if there was something wrong that was done in the case, certainly that's when a conflict may develop. But if there is no such belief, I don't see how there could be a conflict. Well, I think there's some concern about there being a conflict. And certainly it seems like if this was a criminal case, I'd stop the proceeding right now. Since this is a civil case, I'm not so sure. Let me just see. Let me confer real quickly. Your Honor, if the court will please, perhaps I can call my client and discuss the issue and provide the court a waiver. I was not aware that this was a concern for the court. I certainly would have addressed it before coming here today had I known. Nobody raised this issue at any point in the proceeding. And certainly we would have addressed it right away. And I'm happy to get my client in the court, you know, if the court pleases. And the court can speak directly to the client if it wishes. It's really for you to raise with your client. But we'll just take a brief recess right now. Sure. Five minutes. We'll be back. All rise. Please come forward. Yes, Your Honor. I just wanted to confer with my colleagues. Ms. Healy, I think we still have a concern, but there's just a situation, since there's so many people here present and ready to proceed, I think we are going to proceed with the oral argument. So proceed. Thank you, Your Honor. And I apologize if I wasn't prepared to answer that question, as the court may have wanted. I can certainly address it if the court wishes me to file something subsequently. I will, you know, do so. Thank you for the opportunity to continue with the argument. Just before I begin, a brief housekeeping matter. I understand that pursuant to Appellate Rule 34d, I am to address both issues on appeals and cross-appeal at once. Then my opponents will do the same. Then I will have a final chance for rebuttal. I'm not sure if that's how the court is expecting to proceed. I do know there's a cross-appeal. Well, we can do this one of two ways. Who's the lead counsel over here? Do you want to do two times or? We're fine with doing just one. Okay. All right. So then just go ahead and present. I just wanted to make sure that was. Thank you for inquiring. No problem. Your Honors, I would like to reserve as much time as possible for rebuttal. Of course, subject to the Court's questions, I anticipate making only a brief presentation. We'll reserve 15 minutes. I would like to. Well, you have. Yes, I have. Oh, I already have. Okay. Just go ahead and proceed. Sorry, 10 minutes. I didn't realize we were already down. Your Honors, I would like to make only two points regarding Lupea's appeal. The first point is this. I believe the trial judge sanctioned the wrong party. I say that because a long line of Supreme Court cases establishes that terminating sanctions of any kind are an extreme remedy to be imposed only in two situations. The first situation is when there is a total failure to provide discovery. And that was the rule established in Hammond Packing by the Supreme Court. And the total failure did happen in this case, but it wasn't on the side of Lupea. The total failure to provide discovery happened on the side of the two Italian defendants, Almaviva S.P.A. and Almaweva S.R.L. And that is the issue that's discussed in our briefing in connection with our motion for default judgment. The second situation, Your Honors, where the Supreme Court has allowed the issuance of terminating sanctions, where there is no total failure, relates to a material failure, where a party has failed to provide discovery that is material to a claim or a defense in the case. In the case, a claim or a defense advanced by the party who obtained the discovery order. And even in that situation, Your Honors, the Supreme Court case law is clear that that type of sanction can issue only if two requirements are met. The sanction has to be just and the sanction has to be specifically related to the issue in the discovery order that was violated. And the Supreme Court has held that those two requirements are intended to address both the general due process concerns and the rule in Hammond Packing. And that, in particular, in Compagnie de Bauxite, is referred to as the specific due process requirement, which require a court to tie the sanction to tailor the terminating sanction or the other type of sanction that's being imposed to the specific claim at issue in the discovery order that was violated. In Compagnie de Bauxite, the 19, I believe it was a 1982 or 1986 case, and I believe the most recent pronouncement by the Supreme Court on this point, the Supreme Court, that it found where the factors that allowed the district court and the appellate court to show that the general due process concerns were satisfied. And it also then went to address the specific factors in that particular case. The sanction was just the admission of certain specific facts that were at issue in the particular defense. Kagan. So are you arguing there can never be a termination of the case? I'm arguing that there can never be a termination of the case without the linking that the Supreme Court has required. I believe that there can never be a termination of the case unless there is a total failure of to provide discovery, and there can never be a total termination of a case involving claims against a variety of parties unless the court specifically ties the termination of a particular claim to the discovery that wasn't provided and the discovery that was at issue in the claim addressing the discovery order allegedly violated. I don't believe, Your Honors. I think in the last two years I've read a lot of cases on this point, unfortunately. Excuse me. I'm sorry. I couldn't find a single case where we have a situation where the judge on its own without the party asking for it goes ahead and issues an order terminating the entire case, all of the claims against all of the parties without even explaining which particular order was violated, what was the claim or the defense at issue in the discovery that we didn't provide that made it impossible for them to address the claim or defense. And they returned to compagnie de bauxite because in that case the court specifically found that the court took extraordinary efforts to tailor the sanction to what was at issue there. And in addition to repeatedly telling the party, you have to produce this discovery that goes to the personal jurisdiction. That was the claim at issue in that discovery order. Yes, sure. I ask you about your Pro Hoc Vitae status. So you argue that you should have had noticed that the Pro Hoc Vitae status was at issue. What would you have done differently if you'd had notice of that? I would have presented my case, Your Honors. But didn't you? I mean, because you were representing the client and the issue was whether there were violations of discovery, isn't it all the same thing whether you had done the thing? You were the lawyer. So if they violated these discovery orders, it was you. So what's the difference? What would you have? I think you did argue we didn't do that. It didn't matter. All these things you're arguing now, aren't they the same kinds of arguments? So I don't believe so for a couple of reasons, Your Honors. I think my understanding of the TSO, as I've referred to it in our briefs, is that he, the trial judge revoked my Pro Hoc Vitae because of the five charges that he identified in the inherent power section of his order. And those were nowhere addressed in the order to show cause that was issued on September 26th. He didn't address any aspect of those charges. I had no idea that he was considering revoking the Pro Hoc. I had no idea what the legal basis for that would be. And I still believe that he did not have the power to revoke the Pro Hoc, because even under inherent power, you, yes. So I don't really understand how you can say that. The order to show cause listed a whole bunch of orders about improper conduct during depositions, listed improper responses to interlocutories, listed a whole I mean, on and on and on. Listed all these things that basically you were accused of doing. I don't understand that there's a difference between those and the ones that the judge then talked about. You're right. I would respectfully refer the Court to the case of Assa. I think it's Assa v. Carey. In Assa v. Carey, which is a case that we cited in our briefs, there was a similarity It involved a sanction against, issued by the State Department. And the sanction had a similar notice that was very similar to the order to show cause, except it was much more extensive. And the Court found that that notice was insufficient. I don't know, looking at that order to show cause, as we tried to explain in the brief, how it could have addressed any of what the judge put in his terminating sanctions order, just providing a bullet point list of orders doesn't tell me anything. I certainly would have been able to address in very much detail what he said in his terminating sanctions order. I don't believe, I mean, we had the opportunity. I asked Your Honors for the opportunity to address, to understand what the judge had in mind, why he believed it was necessary to issue an order to show cause, what specific sanctions he was considering. Yes. Were your rights, I mean, really impinged by revoking the ProHoc Beach status at the end of the case when ProHoc Beach status only confers, you know, the ability to appear in a case temporarily for the purpose of conducting a particular case? I mean, it seems like the case was over. So whether you got what you claim sufficient due process or not, your ProHoc Beach status would have been over anyway. Your Honor, I was greatly damaged with respect by the revocation, not so much because as Your Honor indicates, if the case is over, the ProHoc Beach terminates, but here it was imposed as a sanction. And I am facing every day of what remains of my career that sanction being put in front of other courts for reasons that have nothing to do with that. It's been greatly damaging. And I think the case law recognizes, including in Cole, that a sanction. The ProHoc Beach has been damaging or the substantive order on the order to show cause? The ProHoc Beach revocation as a sanction is greatly damaging. My practice, Your Honor, has been for 14 years. I practice in business litigation and I've appeared ProHoc Beach in many cases. I mean, mostly I appear ProHoc Beach, actually. And to have the – I don't know if I'll be able to appear again in other cases. There's many courts that require the disclosure of sanctions. Some courts don't. But aside from the disclosure, Your Honor, having that revocation is a very, very significant smear on my professional reputation. And I believe at a minimum before I'm taking away the possibility of practicing ProHoc Beach in that case or having to have this on my career, I should be given at a minimum the opportunity to address in detail what the judge believes I did wrong. So if we just vacate the ProHoc revocation, that takes care of that, right? I mean, if there's a remand, it's another issue. But if the case is over here today and all we do is vacate the revocation of your ProHoc status because it doesn't matter, the case was over, that takes care of it, doesn't it? I think if Your Honor writes an opinion saying that the court will vacate it because it doesn't matter, it will still be substantially prejudicial to me. Because the issue, Your Honor, is what the judge wrote that led to the ProHoc revocation. I have to have the ability to – I want to give the Court an example. And I think, yes. Kagan, if we vacate that ruling, then you don't have that. Then it's not there. Yes, of course. It's no longer there. So that would address that concern, it seems like. You still have the order to show cause substantive ruling that I think would cause more concern. Your Honor, I would like to spend one more minute, if I may, because I realize that actually time does go by much faster than I thought, to address one point about my client, which is the most important part of the appeal. I think, Your Honors, I understand that the TSO reads in a way that makes us look very bad. And all I'm asking the Court here today is for fairness and for the Court to review the actual record. When I say the most irrational thing in this case is that we actually moved for a hammock-packing default judgment because we were given no discovery but two defendants. And what we instead got was an order to respond by the district judge addressing things that no defendant requested, the sanction that the Court issued. And I think to me that's the most important part of the case. And I obviously was greatly personally damaged by the sanction. But I'm here today really for my client. And, Your Honor, with that, I will reserve the balance of my time. Thank you. Thank you. May it please the Court, Mitchell Mervis for the Alma Wave defendants. Your Honors, this case should have been a simple trade secret and tortious interference case, but it went off the rails for two reasons. First, the plaintiff would not identify the basis of what trade secrets Alma Wave allegedly misappropriated and what tortious acts Alma Wave allegedly committed to steal Loop's business. Second, unfortunately, Loop and its counsels simply would not conform their behavior to comply with the basic rules and requirements set forth by Judge Ryu and Judge Gilliam as required by the local rules. The case turned into a literal nightmare. Over 1,000 docket entries, over approximately 175 of those docket entries were orders by Judge Ryu and Judge Gilliam. That's almost 20 percent of the docket. Judge Gilliam and Judge Ryu exhibited extraordinary patience in trying to keep the case on track. And if anything can be said about them, maybe they tried too hard, because the argument essentially is more sanctions should have been issued, should have been issued earlier, and Loop, therefore, didn't have enough advance warning of the perils and thin ice that it was on. That's not the law. The fact that Judge Ryu and Judge Gilliam said time and time again that the behavior is unacceptable, that the orders must be complied with, that the discovery must proceed for naught, does provide the requisite warning and opportunity for Loop to understand that things needed to change and needed to change quickly. We're not talking about minor misconduct. And I know the Bauxites case, this Circuit's case law since Bauxites, implementing Bauxites has a very clear five-factor test that this Court has applied over and over again in Rule 37b2 appeals. And that those cases make clear, particularly in the Valley Engineers case, that a pattern of discovery abuse is sufficient grounds for a dismissal order. And that is what we have here. I want to jump you ahead to a question that I want to ask at some point, and if you want to put it off, that's okay with me. When I sentence people in a criminal case, two counts, I impose a sentence on count one and a sentence on count two. If the appellate court decides I messed up count one, they don't just vacate the sentence on count one. It's called the sentencing package. They look at both counts. They send it back to re-sentence entirely. So here's my question. You got a district judge that looked at this and said, I'm going to terminate the case. I'm not going to impose any attorney's fees. So it seems to me that at least on one view, the district judge said, I've got egregious misbehavior. Here's how I choose to sanction it. So my question to you is, you want us to disapprove the fee part. Isn't it a sentencing package? And if we vacate the denial of fees, don't we have to vacate the terminating sanction and tell the district judge, think about the whole package again? That's an interesting question, Your Honor. I would go to the principle of severability that exists for statutes. And in this case, the attorney fee issue is completely severable from the question of the dismissal sanction. There are two different sets of sanctions. One goes to whether the case can continue, and the other goes to whether the victimized party should receive compensation for it. We don't ---- Fair enough. Good answer. The fees under the California Uniform Trade Secrets Act cuts, I guess, and under 1927, those are both discretionary, right? They both talk about may. We argue that the cuts of statute properly read would require mandatory fees. You have a case that stands for that? Doesn't it say may? Ms. Breyer is going to handle that in her portion of the argument. But certainly 1927 is discretionary, and certainly since the 1993 Rules Amendments, Rule 11 is discretionary. So Judge Gilliam very well may, upon remand, say I've already made my decision, I've now read the papers, and what I said before still stands, in which case we'll lose. The papers have been submitted. It won't require much work to give Judge Gilliam not just the opportunity, but the time that he is required to spend to consider the issue. It won't require a lot of work. I mean, I got into the summary judgment papers, and it was pretty clear to me that if I could have sorted it out in a couple of hours, I'd have been ready for this hearing. It was pretty clear to me that it wasn't going to be just a quick job. It was going to be a lot of effort to sort all that out. The rule of the sanctions issues do not require anything like the summary judgment level of inquiry. The sanctions issues go to the question of whether any evidence – well, two things. Number one, whether any evidence has been presented to show that claims had a basis. If some evidence exists to support the claims, some facts to show they were brought in good faith, that's it. It's done. That's for Rule 11. For the 1927 claim for vexatious litigation, Judge Gilliam certainly knows those facts perfectly well, and that's the area probably where there is some overlap, Your Honor. So what standard of review do we apply to the Rule 11 question, and what are we actually reviewing here? Are we reviewing the merits of the motion, or are we reviewing the district court's decision to decide the motion was moot? I wish I could give you a one-sentence answer to that question, Judge Merguez, but, in fact, it's a complicated one. The judge's ruling that loop – I'm sorry, that Alma Wave and IQS could not seek fees or costs, all parties to bear fees and costs, was a sui sponte peremptory ruling. It was improper. Courts must give an explanation for why fees or costs are not permitted, number one, and, number two, the time to ask for fees and costs is after the decision is rendered under Rule 54d. So it was technically improper and premature and peremptory. As a result, this Court has multiple options. It can consider the issue de novo under its inherent discretion to consider the issue and to settle it. You have a case that says that? I thought it was up to the district court's discretion, not ours. If the district court doesn't exercise its discretion, Your Honor, that gives this court the – What case says that we don't just remand for the district court to do that? Your Honor, I wish I could recall the case. It's in our brief. I don't recall the case. But in our discussion of this issue, it is cited there. Assuming – But that's just one option. The Court has other options. Go ahead. I'm sorry. Well, it sounds like you're saying we review the merits. You have the option of reviewing the merits. Okay. You also can remand to Judge Gilliam and have him consider it in his plenary capacity as a district court judge to hear it in the first instance. That is up to this Court as to how it wishes to proceed. I understood your answer to my question earlier about the sentencing package. And plainly what – you've got an argument that we should uphold the dismissal and send the fee question back. If we decided that it was a sentencing package and the choices were vacate it all or affirm it all, what's your choice? Affirm it all. Wouldn't it be reasonable for us to read the district court's, as you said, sua sponte decision to not grant fees or costs to either side as some sort of slap on the wrist to your side? I mean, given everything else he said, isn't it reasonable to read that as him saying there's a little bit of fault at least on both sides? It's plausible, Your Honor. We don't know because he didn't say. That is one possible explanation. Another possibility – possible explanation is he knows the volume of the litigation that occurred and knows that Loop incurred an incredible drain of resources as well and wants to cut the bleeding for everyone. Another possibility is Judge Hinkle's suggestion that having already exercised a very serious order that kills Loop's case, Judge Gilliam felt enough is enough and I don't want to go any further. And yet another possibility is Judge Gilliam was properly and understandably exhausted with the proceedings and 175 docket entries of orders that had been entered. We don't know which it is and it may be a combination of some of them. If we – on the attorney's fees, if it's an abuse of discretion, are we reviewing the district court's decision that each party bear its own costs or are we reviewing the district court's denial of the motion for attorney's fees? Well, there are three events that occurred and so we need to break them up. The first was the Rule 11 motion that Almaway filed in the summer of 2016. Judge Gilliam determined that that was rendered moot by the termination order. That's plainly incorrect. Rule 11 sanctions aren't rendered moot simply because the case is dismissed for discovery abuse. So that – And that motion had asked for fees? Yes. So that motion – yes. But if he decided, in my theory, sentencing package enough, I've given sanction enough, I'm not going to give any other sanctions, then it is moot because he's already resolved the fee question. That would be correct. That absolutely would be correct. So the first is the Rule 11 motion. The second is the order all parties to bear costs and fees. And as I've explained before, that's plainly incorrect. It's a summary, peremptory ruling without any opportunity for argument to be made. And indeed, in the case of the Cuxa claim and the 1927 claim, any such argument would have been premature. They have to be brought after the decision is rendered. So that is a simple legal error that would need to be taken. The third issue is what happened after the terminating sanctions were entered. And there Almaway filed a motion for fees, knowing that the Court had already denied fees. And Judge Gilliam said, oh, no, this is really a motion for reconsideration. And if so, it's not filed in proper form, and it's too late because I've already ruled you're not getting the fees. So that wasn't appealed. That was not appealed, correct, because it's just by one of the parties, but not by one of the parties. On our side, Judge Hinkle, and that's because the appeal – the order denying fees had already been entered, so it was essentially a redundant motion and didn't do anything more than what Judge Gilliam had already ruled. So that was not appealed. Then IQS, the other set of defendants, filed their motion for fees, and that was denied by Judge Gilliam again on the basis that he had already ruled that fees should not be denied. That last motion has been appealed and is before you. My client is not a party to that particular motion. So, again, the basic options are you could consider it unseverable. We're saying here, no, the attorney's fees are secondary to ending this litigation if that is your determination. Second, decide the sanctions for fees and costs issue on yourselves in the first instance. Third, remand it back to Judge Gilliam for a decision. Those are the three options that are available to you. Do you have a co-counsel that's going to argue something? Yes, for IQS. If there are no further questions. Actually, on my question. How much time were you going to give here? Three minutes, Your Honor. Okay. Okay. I do want to address a few points that counsel made. Number one, on the Pro Hoc Vitae point, I believe when that was asked, the issue on Pro Hoc Vitae, and I think, Judge Merdia, you touched on this, is that Loop and acknowledge the local rules and the standing orders that the district court judge issues and that the magistrate judge issues. And that is the reason why this case ran off the rails. She would not cooperate in the discovery. But her fundamental position that she will not abide by the rules and the orders of the court to operate its courtroom is why Pro Hoc Vitae needed to be withdrawn. The box where she checked on her application where she swore to abide by, to read and abide by the local rules was essentially withdrawn by her. She's taken the position the local rules don't apply. And so Judge Gilliam properly unchecked the box. That's effectively what happened. It is almost an administrative act given her position and her behavior in the court. It's not a sanction. It's not anything more than simply saying your behavior shows you're not living by your oath, therefore, we withdraw. But didn't Judge Gilliam go on to say that he would not allow her to be Pro Hoc Vitae in the future? And in those end, that is not an appealable issue either because it's simply saying every time you submit a Pro Hoc Vitae application before me, I'm going to reject it because you're not going to abide by my rules. And the Ninth Circuit law is clear that is not appealable because it is not a sanction. It's an administrative matter over which the court has full discretion and it isn't a sanction. But should there be an opportunity for her, for Ms. Healy to talk about that before that's final in light of what she has asserted is damage to her reputation? In some ways, I would say yes, Judge McGee, in the sense that if she had something to say to Judge Gilliam that would somehow say I am wrong and I will conform my behavior to the rules and requirements and standing orders of this court and I didn't do it because I was wrong in my misapprehension as to their effectiveness and validity and legality, then yes, she should have the opportunity to say that to Judge Gilliam. But if her position simply is I want to defend myself and my honor and everything I did and my right to disregard the rules and orders, then the answer is no, because that is not a valid justifiable excuse for maintaining ProHoc V.J. status. I see my time is almost out. I want to address a couple other points on the no discovery. We can't say this often enough. Alma Wave stipulated over and over and over again that all of the discovery being produced below, 54,000 pages of documents, five or six deponents all from Italy, all employees of the Alma Wave Italy defendants were appearing both on the merits and jurisdictional discovery. There was no separation. Nothing was withheld. All of the discovery was provided below that was ordered. And then finally, the notion that no party requested termination is simply not true. There are three or four instances in which Alma Wave specifically, by the summer of 2016, was telling Judge Ryu and Judge Gilliam that the time has come. We can't do this anymore. And the Rule 16-F motion that Alma Wave filed specifically requested that relief because the case simply could not be tried, not when there were a hundred witnesses, most of whom had never been deposed, thousands of exhibits, tens of thousands of pages of documents, and no identification of any theory upon which liability was being based. I just wanted to make one note before you went back down. You might want to tell the lawyer that handled the cases below it's not okay to tell opposing counsel to shut up or to berate witnesses during breaks. There's some of that on your side of the case that wasn't okay. I understand that, Your Honor, and I think that message has been heard. I appreciate it. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Janet Breyer and Jonathan Varnica, appearing on behalf of Defendant Appellees and Cross Appellees Annegotti, IQS System Inc. and IQS System LLC. Before I begin, Your Honor asked a question regarding CUTSA and whether it's discretionary. It certainly is. However, our position is that from the record below regarding the conduct, it can be found that there was bad faith conduct such that the CUTSA attorney field the TSO field, and the TSO field is a district court. I'm not sure that that's something the district court would have to decide. Do you have any case that says that we, on appeal, can make that determination? No, Your Honor, I do not. I just wanted to bring up that point. To this very day, Loup insists that the discovery and trade secret disclosures were proper. That there was nothing wrong with them, and hence the TSO is proper. I would direct this court to focus on simply two items in the record which would sufficiently support a dismissal with prejudice. That being the trade secret disclosure, the absolute failure to disclose trade secrets, and the failure to acknowledge that it did not comply with the court's May 3, 2016 order to serve supplemental discovery requests. Out and out, Loup refused to supplement those discovery requests. Ultimately, the court had to ask, did you do it? And they said, no, because we didn't need to. That supports a dismissal under Rule 37. This case had such a breakdown, the counsel couldn't even meet and confer. There was a motion filed by Loup claiming they met and conferred. I pointed out that they did not. This is the misrepresentation in the case made directly to Judge Rio. Ms. Healy represented that she called me on multiple occasions. And then when the court put her to proof, she changed it to e-mail. That was a false statement made to the court. That would certainly support the sanctions or would bolster the sanctions that are being awarded in this case, that of dismissal. If I understood it, then she didn't have any e-mails either. Nothing, Your Honor. And I got that, and I was looking at it saying, this never happened. And I didn't know I could get all my AT&T records. I was up that night. I was getting everything I could. So there was an enormous waste of judicial time and energy on a false representation in this case. And I would submit that it wasn't the only one made to the court. Loup couldn't even confer on basic matters like pretrial work, motions and limine. The defendants had to file a motion because we couldn't get anywhere. Loup couldn't even, when it came to trial, Loup submitted 3,648 individual exhibits. If we were to take a minute per exhibit, that would be 60 hours of trial time. We had an 80-hour trial. We tried to meet and confer with counsel. She refused. Judge Gilliam saw where this case was going. It could not be tried. There was not a disclosure of the trade secrets. There was nothing to be done with this case. There was a refusal to follow the rules. IQS refused to allow witnesses to answer questions at depositions. I was at a deposition where she took the position that I could not, as counsel for IQS, ask questions of the deponent. That was clearly improper. When she wasn't objecting the question, she was coaching witnesses, as is clear in the record on the OSC and in the terminating sanctions, and she testified on behalf of witnesses. Loup continues to torture the record. She states at page 40 of her third brief on cross-appeal that the order on the motion to enforce sanctions regarding the trade secrets had nothing to do with Rule 37, when indeed the motion that IQS filed and the other parties joined specifically said this has gone too far. We have to have the sanction of dismissal. And that's mentioned at the order at page 3. Loup was warned many, many times of sanctions. But instead of taking those to heart, she decided to attack Judge Ruh. She decided to say that there was animosity towards her, and then she turned on the judge's clerk. That was beyond the pale. Loup's established conduct supports a finding in her CAFSA. Granted, Judge Galeem did not reach that issue. Loup's bad faith contact, the misleading of the court, the vexatious multiplication of the proceedings support an award of fees under Section 1927. I believe the record is clear. I don't have a case that says that you can sua sponte, find that in the record. However, the parties suggest that this be remanded back for a finding as to the fee. Mr. Mervis gave me a very clear answer, which I appreciated, to my question. If you had a choice to affirm across the board or to vacate the order and send it back to reconsider not just fees but also terminating sanctions, would you send it back or would you take the affirmance? Well, Your Honor, I think I'd have to look at it as a practical matter. This case has driven my clients into the ground. They have no funds to continue forward. So we were hoping to recoup funds. If we had to retry this case, I think Judge Galeem's decision to dismiss this case must be affirmed by this Court. Even at the cost? No, not at the cost of us not getting fees because as a practical matter, I don't know what the collection rate would be on the fees. All I know is my client would be hemorrhaging money and further money. So your answer is the same as Mr. Mervis's? Yes. I think as a practical matter, I'd have to. My client can't afford it. They can't afford to go on. We don't know if we'd ever collect fees. The practical thing is yes. Affirm, affirm, affirm. This conduct was egregious. The Rule 37 motion focuses on justice, and it would be just to affirm this. This case cannot go on any further. Thank you. Thank you, Your Honors. Your Honors, I know I have very limited time, so I'll try to respond to the points I believe are more important. First, I met Mr. Mervis here for the first time today. He was not counsel below, as Judge Hinkle noted. If he represents to this Court that there was no merits to the case, why then did they not pursue their cross-appeal of fully briefed summary judgment motions that had been pending in front of the Court for eight months? I could not find a single case where parties fully briefed summary judgment motions and Ms. Breyer below represented only one of the three parties that she now represents. There were four — excuse me. There were three summary judgment motions and a motion to strike that was filed by the Italian defendants and Alma Wave USA concurrently. Those motions were fully briefed. They addressed the merits of every single claim. If there was no merit to our claim, it would have been very easy for the Court to simply rule on those pending motions. Second point I would like to make, that Mr. Mervis again repeated to the Court that his clients produced everything, apparently today saying 54,000 documents. In his brief, at one point they say 36,000 documents. They were all one and the same. And all I ask the Court to do is to please review the record. In particular, ER 9753 is a portion of a brief filed by the Italian defendants and several pages below, 9756, 9773, 9774, where the Italian defendants repeatedly represented to the Court they are entities legally distinct from Alma Wave USA with separate offices, boards, and books and records in every single one of the responses to the discovery request, which I hope the Court takes a moment to review. The Italian defendants represented that they were producing nothing. Your Honors, we did not receive that discovery. And I'm not asking the Court to believe me, but I'm asking the Court to believe the record. But you did get discovery from Alma Wave USA. Your Honor, we addressed that in the default judgment. Alma Wave USA actually represented in its discovery response, which were filed with the default judgment, that the word Alma Wave Italy and Alma Viva were vague and ambiguous, that they were just producing what was in their possession, custody, and control. And in the default judgment motion, we specifically addressed key evidence that we requested that was never produced by Alma Wave USA. So we were faced with a record of 500-plus discovery requests, which, Your Honors, begin at ER-1145 to ER-1358, and then ER-1359 to ER-1576. That's a section of the ER where the Court will find everything relating to the default judgment. So we received 500-plus responses that said specifically, they are not responding. Each of the Alma Viva SPA or Alma Wave USA objects to each interrogatory, document requests, and does not provide a response on the grounds that the Court has not yet determined personal jurisdiction. And obligating them to participate in discovery would be a constitutional violation. This was the response, several iteration of, sometimes they change some words, in every single request. When we filed the default judgment motion, this is what we had. And that's why, Your Honors, we spent substantial time trying to request specific relief against the two Italian entities. We did not move for a default against Alma Wave USA because, like I was trying to say at the beginning of my argument, there are different remedies when some party does some production. But the idea that Alma Wave USA produced in their behalf is not in the record and is not, Your Honors, what happened. I would like to address a third point. Ms. Breyer talked about the trade secret disclosures. Your Honors, and I've been accused today repeatedly of violating the local rules. I was asking the Court to apply the local rules. I believe we were materially prejudiced by the magistrate procedures. And I think under Hollingsworth v. Perry, the Supreme Court does give a party a right to please ask the Court to apply the procedures. Those procedures were very prejudicial. I have practiced for 14 years. I have never had a situation like this. I am not one to tell the Court, no, I'm not going to comply with your order. Your Honors, we did the best we could to comply. And the trade secret disclosure, yes. I don't want to slow you down. One example. You were ordered to produce documents for which you had not filed a privilege log. You sought mandamus in the Ninth Circuit. Yes. You did not get a stay of the order. Yes. You did not produce the documents. Yes. You violated the order. What am I missing? Your Honor, that's true, but that's a different issue. That was a sanction. That wasn't a discovery order. It was a sanction that was issued by the magistrate without notice, and they addressed that in detail. The Supreme Court has held that if we want to preserve privilege, we have to risk contempt. That was the basis for our mandamus. When the Court denied the mandamus, we immediately produced, at the time the Court issued the terminating sanctions order, we had produced those documents. And I submit to Your Honor that those however many documents were part of the privilege log cannot be a basis to dismiss all claims against all parties. I want to take the example of Anna Gatti, who was the principal defendant, individual defendant in the case, and the former CEO of my country. She wasn't represented by Ms. Breyer. She was represented by another counsel below. The key claims against Anna Gatti have nothing to do with any aspect of the terminating sanctions order. She's barely mentioned, Your Honor. She had contract claims. There were substantial claims that had literally nothing to do with anything in the case. As of May 2016, the magistrate issued an order where she found that Anna Gatti, two months after the discovery was closed, had produced discovery only in response to one of 93 discovery requests. And that happened in May, set forth in our brief at the beginning, I believe, where we lay out who the parties are. And I know I'm way beyond my time, Your Honor, and I apologize. Okay. Thank you very much. I want to thank all the lawyers for their presentations here today. The case of Loop AI Labs, Inc. and Valeria California Healy v. Anna Gatti et al. is submitted. We are now in recess. Thank you.
judges: Murguia, Friedland, Hinkle